UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL D. STORMAN<br><br>Plaintiff,<br><br>v.<br><br>U.S. OFFICE OF THE SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Defendant. | No. 2:18-cv-02654 AC<br><br><br><br>ORDER |

Plaintiff, who is proceeding pro se, appeals the decision of the Medicare Appeals Counsel denying his request for ongoing home health services. ECF No. 1, 13 at 1. This case is before the Magistrate Judge for adjudication by the consent of all parties. ECF Nos. 9 and 21; see 28 U.S.C. § 626(c)(1). Before the court are cross motions for summary judgment. ECF Nos. 24 (plaintiff's motion for summary judgment) and 25 (defendant's motion for summary judgment). For the reasons explained below, defendant's motion is GRANTED, and plaintiff's motion is DENIED.

**I.  Background**

Unless otherwise specified, the following facts have been provided by the Administrative Record (AR) filed at ECF No. 14.

////

1

1. Medical History

Plaintiff is a male born in 1950 who has several chronic health conditions including hypertension, osteoarthritis of the knee, hiatal hernia, basal cell carcinoma, Barrett's esophagus, left keratoconus, obsessive compulsive disorder, autism spectrum disorder, major depression, hemochromatosis, gastroesophageal reflux disease ("GERD"), Tourette's Syndrome, chronic conjunctivitis, prediabetes, and drug-induced Parkinsonism. AR 42. The record does not include any indication of a change or worsening of plaintiff's various chronic conditions. See AR 37-59. Plaintiff lives in a retirement community and does not drive, but he is able to perform all activities of daily living ("ADL"). See AR 42; AR 56 (at 12/4/2017 dermatology appointment, Plaintiff "ambulated from the room"). Plaintiff is enrolled in Kaiser Permanente Senior Advantage Medicare Medi-Cal Plan North. AR 16, 167.

In November of 2017, plaintiff told his primary care physician, Garth Davis, M.D., that he was interested in home health services on a permanent basis. AR 54. Dr. Davis explained to him that such services are typically for short-term rehabilitation after a patient has an acute decline in function, but informed plaintiff that he would ask the social work team if there was more that could be done for him. Id. On December 4, 2017, plaintiff told Dr. Davis that "he should receive home care every week or 2 indefinitely due to his multiple conditions." AR 57. Dr. Davis noted that plaintiff was "[n]ot able to articulate his skilled nursing need other than his mental and emotional state are not stable." Id. Plaintiff stated "I need someone to tell me what to eat . . . And I cannot handle all this stress . . . I need someone to check my blood pressure." Id. Plaintiff's blood pressure, however, was "well controlled" and "at goal." AR 49 (10/23/2017 telephone consult with Dr. Davis); AR 50 (11/1/2017 examination by Dr. Davis). Dr. Davis declined to prescribe home health care services because plaintiff "does not have a skilled nursing need that would justify home health." AR 58 (12/20/2018); see AR 54, 57. Dr. Davis recommended that plaintiff use the resources available to him, including transportation through Kaiser.

Plaintiff received treatment for his GERD from a gastroenterologist, Dr. Chhaya Hasyagar. AR 44-45 (8/21/2017 telephone call "[o]verall doing better"), 48 (10/16/2017

telephone call "overall doing better" and decreasing GERD episodes), 37 (3/5/2018 telephone appointment noting Plaintiff "[o]verall doing well except when he eats too fast or eats food that he is not supposed to"). On 3/5/2018, Dr. Hasyagar noted that plaintiff asked for home health support, and she "informed him that while it sounds reasonable, [she is] not actively following him for his other chronic conditions that he needs help for" and advised him to follow up with his primary care physician. AR 164. There is no record of an in-person examination or appointment with Dr. Hasyagar and no record of further discussion between the two regarding home health services. See AR. Plaintiff also received treatment from a dermatologist, Sima Zahra Torabian, M.D., who examined him in person on December 4, 2017. AR 55-56. Dr. Torabian conducted a punch biopsy, performed cryotherapy on plaintiff's face, and noted that plaintiff "tolerated the procedure well" and that plaintiff "ambulated from the room." AR 56. Dr. Torabian did not order home health services for plaintiff. See AR.

Plaintiff also received vision services from an optometrist ("OD"), Judith Lightman, who is not a medical doctor. AR 36. Lightman examined plaintiff on March 19, 2018 and noted that plaintiff "needs speech therapy, therapy for depression and blood pressure monitoring and blood tests at home. He has minimal to almost no transportation and is in need of Home Healthcare in general." AR 36 (3/19/2018 visit). The record does not include any evidence that Lightman treated plaintiff, or was qualified to treat plaintiff, for any speech conditions, depression, or blood pressure conditions. See AR.

2. Procedural History

On December 26, 2017, plaintiff requested approval of home health services from Kaiser. AR 414, 428-431. On January 9, 2018, Kaiser denied plaintiff's request for home health services, concluding that plaintiff was not qualified for home health services. AR 424. Plaintiff appealed the denial to his Plan, the Kaiser Foundation Health Plan, which agreed with the denial and sent plaintiff's case to an independent reviewer, Maximus Federal Services. AR 412. On March 6, 2018, Maximus affirmed Kaiser's denial on grounds that plaintiff did not meet the requirements for home health services because skilled nursing or therapy services are not medically necessary, indefinite home health services is not reasonable and necessary for treatment, and because

3

plaintiff is not home bound.  AR 405-407.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") to appeal the Maximus determination.  AR 39-40.

A hearing was scheduled for April 30, 2018, and plaintiff submitted additional medical records for review including the March 19, 2018 letter from optometrist Lightman and a March 5, 2018 telephone appointment with gastroenterologist Dr. Hasyagar.  AR 34-37.  On April 30, 2018, ALJ Steven R. Parrish held a hearing at the Office of Medicare Hearings and Appeals in Kansas City, Missouri.  AR 438-455 (transcript).  Both plaintiff and a Plan representative appeared and testified.  AR 445-54.  Plaintiff testified that he was seeking home health services to be renewed every 60 days for the rest of his life "solely to preserve my longevity and to live a longer more fruitful life."  AR 445.  He submitted the March 19, 2018 Lightman letter and the March 5, 2018 gastroenterologist telephone appointment in support of his request.  AR 445-46.  On May 9, 2018, the ALJ issued an unfavorable decision, holding that the Plan was not required to approve plaintiff's request for home health care.  AR 16-23 (decision).  The ALJ noted that the record included no evidence that plaintiff was homebound and that plaintiff's request for home health services 1-2 times per week was for blood pressure monitoring and general care.  AR 17, 23 (referring to March 2018 Lightman letter and December 2017 primary care physician records).  To qualify for Medicare coverage of home health services, a plan of care ordered by a physician for home health services is required; the ALJ explained that plaintiff's record did not reflect a plan of care ordering home health services for plaintiff, and such a plan is "necessary to determine what services are necessary and the frequency with which they need to be provided."  AR 23.

Plaintiff appealed the ALJ's denial to the Medicare Appeals Council ("MAC").  AR 10.  On September 20, 2018, the MAC held that plaintiff did not qualify for lifetime home health services and adopted the ALJ's decision.  AR 3-7.  In addition to adopting the ALJ's decision, the MAC made the following factual findings: that the "record does not indicate that a physician ordered home health services for the enrollee, established a plan of care of the enrollee, or requested pre-authorization for home health services.  Moreover, the record does not demonstrate that the enrollee requires or has been receiving skilled care."  AR 6.  The MAC also addressed

plaintiff's request for home health services every 60 days for the remainder of his life, concluding that the MAC did not have authority to grant lifetime or indefinite home health services because home health services must be re-certified every 60 days for the services to continue over a period of time. AR 6.

On September 28, 2018, plaintiff filed this lawsuit. ECF No. 1. Defendant answered on April 22, 2019. ECF No. 13. The parties filed cross motions for summary judgment. ECF No. 24 (plaintiff's motion), 25 (defendant's motion), 26 (defendant's reply).

## II. Analysis

A. Legal Standards Under the Administrative Procedures Act

In general, summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In cases arising under the Administrative Procedures Act ("APA") the court's review on summary judgment is based on the agency's administrative record. See Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1472 (9th Cir. 1994), Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 883–84 (1990). In APA cases, the court must determine whether the agency's record supports the agency's decision as a matter of law under the APA's arbitrary and capricious standard of review. See Nw. Motorcycle Ass'n., 18 F.3d at 1472 ("[T]his case involves review of a final agency determination under the [APA]; therefore, resolution of this matter does not require fact finding on behalf of this court. Rather, the court's review is limited to the administrative record...."); see also Occidental Eng'g Co. v. INS, 753 F.2d 766, 769 (9th Cir. 1985).

Under the APA, the court must hold unlawful and set aside an agency action that is:

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C.A. § 706(2) (West). The burden is on the plaintiff to demonstrate that the agency's

decision was arbitrary, and, "[a]bsent a showing of arbitrary action, [courts] must assume that the [agency has] exercised [its] discretion appropriately." See Kleppe v. Sierra Club, 427 U.S. 390, 412 (1976). An agency decision is arbitrary and capricious where it "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfr.'s Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29, 43 (1983); San Luis & Delta-Mendota Water Authority v. Locke, 776 F.3d 971, 994-95 (9th Cir. 2014).

B. Medicare Part C Appeals

Enrollees in Medicare C plans may appeal the failure to receive Medicare benefits under the procedures set forth in 42 U.S.C. § 1395w–22(g). The exclusive avenue for judicial review of the Secretary's final decision is governed by 42 U.S.C. § 405(g). See 42 U.S.C. § 1395w–22(g)(5) (the Medicare C enrollee may seek judicial review pursuant to 42 U.S.C. § 405(g) of the Social Security Act when the amount in controversy meets a certain minimum); Do Sung Uhm v. Humana, Inc., 620 F.3d 1134, 1140-41 (9th Cir. 2010); Kaiser v. Blue Cross of California, 347 F.3d 1107, 1111 (9th Cir. 2003) ("[j]urisdiction over cases "arising under" Medicare exists only under 42 U.S.C. § 405(g)"). On appeal, the court must determine whether the evidence in the administrative record permitted the agency to make the decision that it made. Generally, the court's review is confined to review of the existing administrative record. Animal Defense Council v. Hodel, 840 F.2d 1432, 1436 (9th Cir. 1988); see also Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric., 499 F.3d 1108, 1117 (9th Cir. 2007).

Judicial review of the Medicare agency decision is "highly deferential." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). The Secretary's findings "as to any fact, if supported by substantial evidence, shall be conclusive . . ." See 42 U.S.C. § 405(g); Mayes v. Masanari, 276 F.3d 453, 458-59 (9th Cir. 2001). "The substantial evidence standard is extremely deferential to the factfinder[.]" Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 149

(1997). "'Substantial evidence' is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Mayes, 276 F.3d at 459; Valentine, 574 F.3d at 690. In applying the substantial evidence standard, "a reviewing court may not substitute its own judgment for that of the agency." Memorial, Inc. v. Harris, 655 F.2d 905, 912 (9th Cir. 1980) (citing Citizens to Improve Overton Park v. Volpe, 401 U.S. 402, 416 (1971)).

C. The Decision of the ALJ and Appeals Counsel is Supported by Substantial Evidence

Defendant is entitled to summary judgment because substantial evidence supports the decisions of the ALJ and the MAC. To qualify for home health services, a beneficiary must be: (a) confined to the home; (b) under the care of a physician who establishes a plan of care; (c) in need of skilled services; (d) under a qualifying plan of care that meets the requirements set forth in 42 C.F.R. § 409.43; and (e) receiving services from a participating home health agency. 42 C.F.R. § 409.42. For many reasons, the Secretary was justified in concluding that plaintiff does not meet the above requirements.

First, plaintiff requested a lifetime preapproval of home health care services, and this is simply not something that is available. AR 445, 5, 57. Defendant notes that there is no authority to grant lifetime approval of home health services, and plaintiff has not identified any such authority. See AR 6; ECF No. 1, 24. The regulations expressly provide that the plan of care for home health services must be reviewed by a physician and signed and dated "at least every 60 days." 42 C.F.R. § 409.43(e). In addition, courts have upheld the denial of home health care services for a physician's failure to review the plan of care every 60 days, which supports the conclusion that lifetime home health services are not authorized. See LivinRite, Inc. v. Azar, 386 F. Supp. 3d 644, *8 (E.D. Va. 2019).

Even ignoring the unavailability of lifetime preapproval, substantial evidence supports the Secretary's finding that home health services should be denied because there is no plan of care by a treating physician as required. AR 23, 6; see 42 C.F.R. § 409.42(b), (d); see 42 U.S.C. § 1395f(a)(2)(C); 42 C.F.R. § 424.22 (requirements for home health services). Not only is there no plan of care, plaintiff's primary care physician denied plaintiff's request for home health services

based on an express determination that plaintiff does not have a skilled nursing need, which is required to qualify for home health services. AR 58. Indeed, the only evidence in the record supporting plaintiff's desire for a home health referral is a letter from plaintiff's optometrist that does not meet any of the technical requirements of a care plan. Compare AR 36 with 42 C.F.R. §§ 409.43, 484.60(a)(2).

Finally, even if the court were to overlook the fact that the remedy plaintiff seeks is unavailable and the fact that plaintiff did not submit a care plan as required to obtain home health authorization, the medical record strongly supports the conclusion that plaintiff does not need home health care at all. While the record does document many medical conditions, they all appear to be chronic, relatively stable conditions. AR 37-59. The record indicates plaintiff's blood pressure is stable and "at goal," his GERD is improving, treatment of his skin issues was well-tolerated, and no worsening of his visual condition. See AR 49 (10/23/2017 blood pressure "has been well controlled"), 50 (11/1/2017 "[b]lood pressure at goal"), 59 (1/19/2018 blood pressure "good"); AR 44-45 (8/21/2017 reported "[o]verall doing better" to gastroenterologist), 48 (10/16/2017 "overall doing better" and decreasing GERD episodes), 37 (3/5/2018 gastroenterologist appointment noting Plaintiff "[o]verall doing well except when he eats too fast or eats food that he is not supposed to"); AR 36 (noting historical vision problems but no new or worsening problems; not recommending any additional vision treatment). Plaintiff asserts he needs home health services to check his blood pressure, to "tell me what to eat," and to have "blood tests every three months." AR 57, 448. Substantial evidence supports finding that this treatment is not sufficiently complex to qualify as skilled services. See 42 C.F.R. § 409.32(a), Superior Home Health Servs., L.L.C. v. Azar, No. 5:15-CV-00636-RCL, 2018 WL 3717121, at *10-14 (W.D. Tex. Aug. 3, 2018) (affirming denial of home health care for multiple patients and holding sufficient evidence supported finding that care was not sufficiently complex to qualify as skilled services where care provided was monitoring vital signs; blood glucose testing; assessing and observing body systems; and/or providing instruction on diet, self-care, and medication).

////

////

### III. Conclusion

Accordingly, for the reasons explained above, IT IS ORDERED that plaintiff's motion for summary judgment (ECF No. 24) is DENIED, and defendant's motion for summary judgment (ECF No. 25) is GRANTED. Judgment shall be entered for defendant, and this case closed.

DATED: November 13, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE